IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY SMITH and<br>DE'QUON NICHOLAS,<br>   *Plaintiffs,*<br><br>v.<br><br>FORMASPACE LOGISTICS<br>SERVICES, LLC and FORMASPACE,<br>LP,<br>   *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. A-17-CV-01171-LY |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
   UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Formaspace Logistics Services, LLC and Formaspace, LP's Motion for Summary Judgment, filed on May 15, 2019 (Dkt. No. 18) ("Defendants' Motion"); Plaintiffs Rodney Smith and De'Quon Nicholas' Response in Opposition to Defendants' Motion for Summary Judgment, filed on May 29, 2019 (Dkt. No. 19) ("Plaintiffs' Response"); and Defendants' Reply in Support of Motion for Summary Judgment ("Defendants' Reply"), filed on June 12, 2019 (Dkt. No. 21). On May 31, 2019, the District Court referred Defendants' Motion to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the U.S. District Court for the Western District of Texas.

## I. GENERAL BACKGROUND

Plaintiffs Rodney Smith and De'Quon Nicholas were hired by Defendant Formaspace, LP, a commercial office equipment manufacturer, in 2015 and fired in December of that year. Both men, who are African-American, allege intentional racial discrimination and retaliation for their

complaints of race discrimination under 42 U.S.C. § 1981, as well as discrimination on the basis of race and religion under the Texas Commission on Human Rights Act ("TCHRA"), § 21.001 *et seq.*, Labor Code, Vernon's Texas Codes Annotated.

Defendants allege that Plaintiffs were discharged based on video review showing that they were clocked in but missing from work areas for inappropriate lengths of time on the morning of December 5, 2015.[1]

## II.     STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent

---

[1] Defendants did not retain video footage from other work days, asserting that the evidence from the December 5, 2015 video alone provides "a legitimate, nondiscriminatory basis for discharging both Plaintiffs." Defendants' Motion at 15; *see also* Lambert Dep. at 47:15-17, Defendants' Motion, Exhibit A ("Q. So they were terminated for the events on December 5th? A. Correct.").

2

summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. ANALYSIS

Defendants argue that summary judgment is appropriate because neither Plaintiff can provide any evidence of racial discrimination or racial hostility; Plaintiff Nicholas admits that he does not believe the manager who fired him, William "Bill" Lambert, discriminated or retaliated against him on the basis of race; a retaliation case is impossible with respect to Plaintiff Smith because there is no evidence Lambert had any knowledge of any complaint raised by Smith; and neither Plaintiff has exhausted his administrative remedies to assert claims under the TCHRA.[2]

Plaintiffs respond that they have exhausted their administrative remedies; the video footage produced by Defendants shows non-black employees clocked in while not working, but Defendants took no action against them; the video footage did not show Plaintiffs' complete work areas, and Plaintiffs also worked in other areas of the plant; and affidavits from Defendants' employees are inaccurate.

---

[2] Defendants also objected to certain of Plaintiffs' summary judgment evidence. *See* Defendants' Reply, Exhibit G. The Court has not relied on any of the evidence to which Defendants objected and so need not address the objections.

**A. Discrimination Claim under 42 U.S.C. § 1981 and the TCHRA**

Plaintiffs allege that Defendants discriminated against them by terminating their employment because they are African-American. The analysis of discrimination and retaliation claims under § 1981 and the Texas Labor Code is identical to the analysis of Title VII claims, so the Court analyzes the claims under Title VII. *E.g.*, *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

Title VII prohibits discrimination against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq*. For cases based on circumstantial evidence, like this one, a court is to apply the *McDonnell Douglas* burden-shifting analysis. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the employer successfully articulates a legitimate, nondiscriminatory reason for its decision, the burden returns to the plaintiff to offer evidence that the reason given by the employer is merely pretext for unlawful discrimination or that the employer's purported reason for its actions was only one of the motivating factors, and that another motivating factor was plaintiffs' protected characteristic. *McDonnell Douglas*, 411 U.S. at 804-05; *Autry v. Fort Bend Indep. School Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).

Here, to establish their prima facie case, Plaintiffs must show that (1) they are members of a protected class; (2) they were qualified for the position; (3) they were subject to an adverse employment action; and (4) other similarly situated employees were treated more favorably.

4

*Standley v. Rogers*, 680 F. App'x 326, 327 (5th Cir. 2017) (quoting *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

Defendants do not dispute that Plaintiffs have satisfied the first three elements of their prima facie case. The question before the Court is whether Plaintiffs have established a prima facie case of discrimination by demonstrating that other similarly situated non-class members were treated more favorably than they were. As the Fifth Circuit Court of Appeals has explained:

> The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[ ] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant.

*Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

The undersigned finds that there is a genuine issue of material fact as to whether similarly situated coworkers who are not African-American were treated more favorably for similar acts of alleged misconduct. Specifically, the record shows that Hispanic employee Juan Aquino was fired the day after Plaintiffs for being clocked in while not at work, but unlike Plaintiffs, Aquino first had been given a warning when another employee clocked him in while he was not at work seven months earlier. *See* Plaintiffs' Response, Exhibit 8 ("Supervisor/Employee Warning Discussion"); Defendants' Motion, Exhibit A-6 ("Supervisor/Employee Termination").

Viewing all inferences from the record evidence in the light most favorable to Plaintiffs, the evidence shows there is a genuine fact issue as to whether Plaintiffs can establish the fourth element of their prima facie case of discrimination by proving that other similarly situated employees were treated more favorably.

## B. Retaliation Claim under Section 1981 and the TCHRA

Defendants also move for summary judgment on Plaintiffs' claims that they were retaliated against after complaining about race discrimination and a coworker's discussion of religion, in violation of Section 1981 and the TCHRA. To establish a prima facie case for retaliation, Plaintiffs must produce evidence that: (1) they participated in protected activity, (2) Defendants took an adverse employment action against them, and (3) there is a causal connection between the adverse employment action and the protected activity. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "For purposes of the *prima facie* case, causation is inferred with nothing more than proof that the employer knew about the protected activity, along with a temporal relationship between that knowledge and the adverse consequences." *Cones v. Duke Energy Corp.*, 367 F. Supp. 2d 1092, 1099-1100 (S.D. Tex. 2005).

Establishing a prima facie case "gives rise to an inference of retaliation." *Shackelford*, 190 F.3d at 408. The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to "demonstrate that the employer's [stated] reason is actually a pretext for retaliation." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007)). In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable factfinder to conclude that the adverse employment action would not have occurred "but for" the employee's decision to engage in an activity protected by Title VII. *Feist*, 730 F.3d at 454.

### 1. Exhaustion of Administrative Remedies

The Court first considers whether, as Defendants argue, Plaintiffs' claim of retaliation under the TCHRA for allegedly having complained about a coworker's discussion of religious subjects is barred because Plaintiffs failed to exhaust administrative remedies by receiving a Notice of Right to Sue from the Texas Workforce Commission ("TWC"). The undersigned agrees with Plaintiffs that no such letter is needed for exhaustion. *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 450 (W.D. Tex. 2013) ("[I]n order to exhaust administrative remedies under Texas law, a plaintiff need not actually request or receive a right-to-sue letter; it is the mere entitlement to the letter that exhausts the administrative process and ends the [Texas Workforce] Commission's exclusive jurisdiction.") (internal quotations and citation omitted); *see also, e.g.*, *Marquis v. Omniguide, Inc.*, 714 F. Supp. 2d 640, 644 (N.D. Tex. 2010) ("Texas courts hold that it is the entitlement to a right-to-sue letter rather than the receipt of the letter that exhausts the complainant's administrative remedies.") (internal quotations and citation omitted); *Tex. Dep't of Aging & Disability Servs. v. DeLong*, 441 S.W.3d 538, 542 (Tex. App.-El Paso 2014, pet. denied) ("'[I]t is the entitlement to the right-to-sue letter and not possession of the letter that exhausts the complainant's administrative remedies.'") (quoting *Rice v. Russell-Stanley, L.P.*, 131 S.W.3d 510, 513 (Tex. App.-Waco 2004, pet. denied)).

In order to comply with the TCHRA exhaustion requirement, an employee must: (1) file a complaint with the TWC within 180 days of the alleged discriminatory act; (2) allow the TWC to dismiss the complaint or resolve the complaint within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed. *Marquis*, 714 F. Supp. 2d at 644. There is no fact issue as to whether Plaintiffs met these requirements. The undersigned finds that Plaintiffs have exhausted their remedies under the TCHRA.

## 2. Causal Connection

Here, for the merits of Defendants' Motion, the Court focuses on the question of causal connection, the third prong of the retaliation test. Defendants submitted evidence that Lambert was the sole decisionmaker with regard to hiring and firing both Plaintiffs. Defendants' Motion, Exhibit E, Declaration of William Lambert at ¶ 2. Lambert testified that he does not recall the Plaintiffs or any other employee discussing with him any concerns about proselytizing, discrimination, or retaliation by Mark Lopez:

> Q. Had anyone ever complained about Mark Lopez's either proselytizing or discriminating or retaliating against them, would you have remembered it?
>
> A. Yes.
>
> Q. Can you say with certainty right now that no one approached you, with respect to Mr. Lopez, either discriminating against him or retaliating against him?
>
> A. Yes.

Lambert Dep. at 115:14-21, Defendants' Motion, Exhibit A; *see also, e.g.*, *id.* at 49:1-18, 50:7-16, Plaintiffs' Response, Exhibit 5.

Each Plaintiff, in turn, testified that they did bring their concerns about Lopez's religious behavior to management within six weeks before they were fired. Plaintiff Nicholas testified that he "told Bill Lambert that Mark Lopez was bothering [him] about . . . the religious talk" in October 2015. Nicholas Dep. at 53:3-18, Defendants' Motion, Exhibit B.

> Q. Okay. Did you ever make a complaint to anybody about -- about Mark Lopez?
>
> A. Yes.
>
> Q. All right. Who did you complain about -- who did you complain to about Mark?
>
> A. I complained to Curtis [Fowler], and I complained to Bill Lambert.
>
> Q. What did you say to Bill Lambert specifically?

8

> A. Specifically, I don't know. But I remember it was about the religion thing and could he just back off. . . .

*Id.* at 52:11-24; *see also id.* at 60:13-61:4. Plaintiff Nicholas, however, also answered "no" when asked concerning Lopez: "Do you have a fact that you rely on that suggests to you that he had something to do with you being terminated?" *Id.* at 147:3-6.

Plaintiff Smith testified that he did not talk to Lambert directly, but did complain repeatedly to his lead employee, Curtis Fowler, that Lopez's proselytizing made him feel uncomfortable. Smith testified that Fowler first told him that he would talk to Lambert about Smith's concerns, and later told him that he had done so. Smith Dep. at 27:3-28:14, Defendants' Motion, Exhibit C. In his own declaration, however, Fowler contradicted these allegations, stating: "I never discussed Rodney Smith, or any conversation I had with him, with Bill Lambert at any time." Declaration of Curtis Fowler at ¶ 3, Defendants' Motion, Exhibit F.

In sum, the parties submitted conflicting evidence as to whether Lambert was aware of Plaintiffs' concerns regarding Lopez's religious proselytizing, and thus whether there could be a causal connection between Plaintiffs' complaints and their termination. This evidence is sufficient to create a fact question regarding whether there was a causal connection between Plaintiffs' terminations and their engaging in the protected activity of complaining about Lopez's actions in the workplace.

## C. Pretext as to Each Claim

The Court assumes without deciding that Plaintiffs could establish a prima facie case as to each of their claims, shifting the burden to Defendants to articulate a legitimate, non-retaliatory reason for the adverse employment action. By submitting evidence that Plaintiffs violated timekeeping rules, Defendants have done so, shifting the burden back to Plaintiffs to demonstrate that the stated reason for their termination actually is a pretext for discrimination and retaliation.

One of the means of proving pretext for both racial discrimination and retaliation is evidence that similarly situated employees were treated differently from Plaintiffs. *See Wallace v. Seton Family of Hosps.*, --- Fed. App'x ----, 2019 WL 2484692, at *8 (June 13, 2019); *Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 Fed. App'x 363, 367 (5th Cir. 2014). As discussed above, there are genuine issues of material fact as to whether similarly situated coworkers who are not African-American were treated more favorably than Plaintiffs for similar alleged misconduct.

With respect to Plaintiffs' retaliation claim, the temporal proximity between Plaintiffs' protected activities and their termination provides evidence of pretext. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.") (quoting *Evans v. City of Houston,* 246 F.3d 344, 356 (5th Cir. 2001)). Taking the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, a reasonable jury could infer that but for their engaging in protected activities, they would not have been terminated.

Accordingly, the undersigned recommends that the District Court deny Defendants' motion for summary judgment with regard to each claim for both Plaintiffs.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY in its entirety** Defendants' Motion for Summary Judgment (Dkt. No. 18).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 472-74 (1985); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. **SIGNED** on July 23, 2019.

_____

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE